

# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

(212) 373-3166

WRITER'S DIRECT FACSIMILE

(212) 492-0166

WRITER'S DIRECT E-MAIL ADDRESS

aehrlich@paulweiss.com

June 6, 2017

**By Fax**

The Honorable Victor Marrero
U.S. District Court
for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

*USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/12/17*

*Karsch v. Blink Health Ltd.*, No. 17 Civ. 3880 (VM)

Dear Judge Marrero:

   We represent the defendants in this action, Blink Health, Ltd. ("Blink Health"), Geoffrey Chaiken and Matthew Chaiken (collectively, the "Defendants"). Pursuant to Rule 13 of the Southern District's Rules for the Division of Business Among District Judges and Rule I.A of Your Honor's individual practices, we respectfully request that this case be designated related to *Kakaulin v. Blink Health Ltd.*, No. 16 Civ. 8476 (GHW), and reassigned to Judge Gregory H. Woods. We have consulted with Mr. Karsch's counsel, who opposes this request.

   By way of brief background, Blink Health is a healthcare technology company founded by Geoffrey and Matthew Chaiken, who serve, respectively, as CEO and COO. Blink Health's mission is to bring access to necessary medications for the uninsured and underinsured. The plaintiff in the *Kakaulin* action, Eugene Kakaulin, is Blink Health's former CFO; some eight months ago, he brought a lawsuit against Blink Health and the Chaikens, alleging various claims relating to his tenure at the company. Mr. Kakaulin was represented in that action by Jonathan Sack of the law firm Sack & Sack LLP—the attorney who represents Michael Karsch, the plaintiff in the lawsuit before Your Honor. We

Doc#: US1:11335260v1

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Victor Marrero                                                                                              2

represented the defendants in the *Kakaulin* action (the same parties as the defendants here) and sought permission from Judge Woods to move to dismiss the *Kakaulin* complaint for failure to state a claim. Judge Woods authorized us to make such a motion. Before the motion was submitted, the *Kakaulin* action was dismissed by stipulation earlier this year.

The *Karsch* and *Kakaulin* actions are related within the meaning of Rule 13, and reassignment of this action to Judge Woods is thus appropriate, for two principal reasons:

*First*, the named defendants in both actions are identical: Blink Health as well as Geoffrey and Matthew Chaiken. More significantly, Mr. Karsch's complaint expressly purports to incorporate the *Kakaulin* action, alleging that "[n]ot coincidentally, the Chaikens made nearly the same promises to senior-level executives in order to induce them into joining Blink" and that "[t]he specifics of the Chaikens' fraud upon Kakaulin and the bait-and-switch are not coincidentally similar to the allegations alleged by Karsch." (Compl. ¶¶ 282–284.) The period during which Mr. Karsch was a lender to Blink Health coincides with the period that Mr. Kakaulin served as CFO, and the two complaints recount a number of the same alleged incidents—including allegations concerning the allocation of equity interests to a former CEO, former in-house lawyer, and others. Indeed, Mr. Karsch's complaint repeats, in many instances, verbatim, dozens upon dozens of paragraphs from the *Kakaulin* complaint. (*Compare* Compl. ¶¶ 282–377, *with* 16 Civ. 8476, D.E. 1, ¶¶ 22–162.) Attached as Exhibit A to this letter is a chart demonstrating the substantial overlap of the allegations.

Defendants emphatically deny all of these allegations, whatever complaint they may be asserted in; as this case goes forward, we will demonstrate that the republication of the *Kakaulin* allegations by Mr. Kakaulin's counsel in the *Karsch* lawsuit is both gratuitous and improper. But it is nevertheless apparent on the face of Mr. Karsch's complaint that both actions concern "substantially similar parties . . ., transactions, or events" and that by Mr. Karsch's own admission—by republishing more than 100 paragraphs of the *Kakaulin* complaint in his own—the two involve, at least to some degree, "substantial factual overlap." S.D.N.Y. Div. Bus. Rule 13(a)(1).

*Second*, Judge Woods is already familiar with a critical and highly sensitive issue that arose in the *Kakaulin* action and that is very much an issue here. In particular, but without delving into all of the details in this letter, the *Kakaulin* complaint contained material that we had strong reason to believe was based on information protected by the attorney-client privilege and/or work product doctrine and/or that was misappropriated from Blink Health and/or one or both of its founders. We also had a compelling basis to believe that such information was provided to Mr. Kakaulin and his counsel—the Sack & Sack firm—by an individual who previously served as a Blink Health in-house lawyer and who was, and perhaps still is, also represented by that very same law firm. And finally, we had reason to believe that Mr. Kakaulin—and, given our prior dealings with the Sack & Sack firm in the *Kakaulin* matter, his counsel as well—were aware of the privileged and misappropriated nature of the materials at issue.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Victor Marrero                                                                                              3

       Significantly, many of the exact same materials at issue in the *Kakaulin* complaint are present in the *Karsch* complaint—and could only have been disclosed to, and used by, the Sack & Sack firm through the same improper means. (*Compare, e.g.*, Compl. ¶¶ 261, 345, *with* 16 Civ. 8476, D.E. 1, ¶¶ 108, 110.) This issue was the subject of argument before Judge Woods last December. As reflected in the transcript of that hearing, a forensic investigation concluded that the former Blink in-house attorney represented by the Sack & Sack firm had misappropriated privileged information and disclosed that information to that firm for use in Mr. Kakaulin's complaint. (*See* 16 Civ. 8476, D.E. 17, Tr. 23:20–30:8.) Now, that information is again being used for a similar improper purpose. It is an issue that we intend to vigorously pursue in this litigation, since Mr. Karsch has elected to adopt and re-publish these allegations, so that the truth of the matter comes to light.

       In short, in light of the fact that the *Karsch* complaint recycles dozens of identical paragraphs from the *Kakaulin* complaint and by its terms describes (falsely) the conduct at issue in *Karsch* as part of a practice also at issue in *Kakaulin*; the fact that the named defendants are the same in both actions; and because the issue of misappropriated information that Judge Woods heard in the *Kakaulin* matter has now emerged in this matter, we believe it would serve the purposes of efficient judicial administration for this matter to be transferred to Judge Woods.

       We appreciate the Court's attention to this matter.

       Respectfully submitted,

       Andrew J. Ehrlich /3148

       Andrew J. Ehrlich

cc:    Counsel of record (via email)

---

> Request DENIED. The Court is not persuaded that a transfer of this case to Judge Woods under the circumstances described above would satisfy the criteria governing related cases as set forth in Rule 13 of this Court's Rules for the Division of Business.
>
> SO ORDERED.
>
> DATE 6-12-17      VICTOR MARRERO U.S.D.J.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Victor Marrero                                                                                              4

## Exhibit A: Duplicative Allegations in the *Karsch* and *Kakaulin* Complaints

| Allegation | *Karsch* Complaint | *Kakaulin* Complaint |
|---|---|---|
| Alleged dispute with Eugene Kakaulin | "... Kakaulin, in the face of the Chaikens' threats of termination, ultimately had no confidence that he would be able to save his job and preserve the value of his shares. Kakaulin expressed his contractual right to sell only a portion of his shares ..." ¶ 326; *see also* ¶¶ 282–294, 298, 300–320, 323–336, 338–345. | "... Kakaulin, in the face of the Chaikens' threats of termination, ultimately had no confidence that he would be able to save his job and preserve the value of his shares. Thus, Kakaulin expressed his contractual right to sell only a portion of his shares ..." ¶ 85; *see also* ¶¶ 24–32, 40, 50–73, 82–96, 104–108. |
| Alleged failure to compensate Karsch for introducing investors | "... When Karsch suggested he'd be entitled to a finder's or placement fee, Geoffrey Chaiken disingenuously responded, 'I don't value introductions but you can count on the value of your Blink investment.'" ¶¶ 195–197. | "... Karsch also requested more equity for his introductions to investors. In response, Chaiken said, 'I don't value introductions.'" ¶¶ 156–157. |
| Alleged dispute involving Chaiken family | "Even more shocking, the greedy Chaiken brothers scammed and re-traded their own *father*, an accomplished physician in New York City, in the same manner they had to Karsch and cousin Falk and others ..." ¶¶ 258–265. | "In late August 2015, a greedy Chaiken shockingly even re-traded his own *father*, an accomplished physician in New York City ..." ¶¶ 110–111. |
| Alleged dispute with Samarjit Marwaha | "On June 22, 2016, Geoff Chaiken persuaded Marwaha to sell 192,901 incentive shares for $3.80 per share, failing to disclose that the company was then simultaneously reselling the same shares to investors at $16.25 per share.... Chaiken smirked and stated ..., 'Sam's loss is our gain.'" ¶¶ 276–80. | "... on June 22, 2016, he persuaded Samarjit Marwaha, the former CEO of Blink, to sell 192,901 incentive shares for $3.80 per share, failing to disclose that the Company had negotiated Series A-2 financing that valued the shares at $16.25 per share ... Chaiken smirked and stated ..., 'Sam's loss is our gain.'" ¶¶ 74–78. |

Note: Emphasis omitted from quotations.