USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/20/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL KARSCH,

        Plaintiff,

-against-

BLINK HEALTH LTD., et al.,

        Defendants.

17-CV-3880 (VM) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

For the reasons stated below, the Court awards defendants Blink Health, Ltd. (Blink), Geoffrey Chaiken, and Matthew Chaiken $174,529.49 in attorneys' fees and expenses pursuant to Fed. R. Civ. P. 37(b)(2)(C) and 37(e)(1), assessed jointly and severally against plaintiff Michael Karsch and his attorneys at Sack & Sack, LLP (Sack & Sack), and an additional $18,151.75 in attorneys' fees pursuant to Fed. R. Civ. P. 37(b)(2)(C) and 37(e)(1), assessed solely against plaintiff's attorneys at Sack & Sack.

## **Background**

On March 1, 2019, defendants filed a motion (Dkt. No. 102) seeking discovery sanctions against plaintiff and his counsel as a remedy for their violations of this Court's earlier discovery orders – including those dated July 12, 2018 (July 12 Order) (Dkt. No. 53), November 13, 2018 (Nov. 13 Order) (Dkt. No. 72), and January 8, 2019 (Jan. 8 Order) (Dkt. No. 93) – and spoliation of electronically stored information (ESI).

In a Memorandum and Order dated June 20, 2019 (the June 20 Mem. & Order) (Dkt. No. 122), the Court granted that motion in part, concluding that plaintiff Karsch spoliated ESI stored on a server maintained by his affiliate Karsch Capital Management, LP (the Karsch Capital Server); that Sack & Sack spoliated ESI stored on various electronic devices given to Sack & Sack by its former client (and defendant Blink's former general counsel) Charles Jacoby (the Jacoby Devices); that Sack & Sack violated the July 12 Order; and that plaintiff violated the

Nov. 13 and Jan. 8 Orders. *See* June 20 Mem. & Order at 26-50, 55. As a sanction, the Court ruled that defendants could "present evidence to the jury concerning plaintiff's takedown of the Karsch Capital Server and his lawyer's loss of the Jacoby Devices," *id.* at 53, and ordered that plaintiff and his attorneys "pay the expenses, including attorneys' fees and out-of-pocket costs," caused by their spoliation and failure to comply with court orders. *Id.* at 55. The Court then directed defendants to submit, no later than July 11, 2019, "one or more declarations evidencing their recoverable fees and costs, as well as the allocation of those fees and costs to plaintiff and his counsel." *Id.*

On July 11, 2019, defendants submitted two such declarations. In the declaration of attorney Laura K. O'Boyle (O'Boyle Decl.) (Dkt. No. 125), defendants seek awards of (1) $30,496.13 in attorneys' fees, from Sack & Sack alone, "for expenses caused by the firm's violation of the July 12, 2018 Order," and (2) $363,968.63 in attorneys' fees, from plaintiff and his attorneys jointly and severally, for expenses incurred as a result of plaintiff's violations of the Court's discovery orders, including the fees incurred in obtaining the June 20 Mem. & Order. O'Boyle Decl. ¶ 8; *see also id.* Ex. C (time entries reflecting expenses allegedly caused by violations of the July 12 Order), Ex. D (time entries reflecting expenses allegedly caused by violations of the Court's other discovery orders). In the declaration of Justine M. Goeke (Goeke Decl.) (Dkt. No. 126), defendants seek an additional $22,178.99 as reimbursement for the costs expended by their consultant Stroz Friedberg to search the "@aol.com" account of non-party Stephen Karsch. Goeke Decl. ¶ 16. The Court has already concluded that this expense was caused by plaintiff's discovery violations. *See* June 20 Mem. & Order at 41.

On August 1, 2019, plaintiff filed his opposition memorandum (Opp. Mem.) (Dkt. No. 129). Plaintiff does not contest defendants' request for reimbursement for the cost of the work done by Stroz Friedberg, nor the proposed allocation of fees between plaintiff and his attorneys

2

(*i.e.*, joint and several except as to those fees caused by Sack & Sack's violations of the July 12 Order). However, plaintiff argues that the amount of fees for which defendants seek reimbursement is excessive because it includes fees not "caused by" plaintiff's violations of court orders; because defendants' counsel's time entries are vague, excessive, block-billed, and the result of overstaffing; and because defendants' attorneys' hourly rates are unreasonably high.

## Analysis

As noted above, the June 20 Mem. & Order found that defendants were entitled to an award of fees and expenses pursuant to Rule 37(b)(2)(C), which provides for reimbursement of expenses, including attorneys' fees, "caused by" an opposing party's violations of court orders, and pursuant to Rule 37(e)(1), which permits a Court to award expenses, including attorneys' fees, to the extent "necessary to cure the prejudice" from an opposing party's loss of spoliated ESI. Consequently, the Court must now determine whether defendants' requested award is reasonable. *See* Fed. R. Civ. P. 37(b)(2)(C) (providing for an award of "reasonable expenses, including attorney's fees, caused by" a party's violation of court orders); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016) (awarding reasonable fees pursuant to Fed. R. Civ. P. 37(e)).

"In determining the amount of reasonable attorneys' fees, '[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *S.E.C. v. Yorkville Advisors, LLC,* 2015 WL 855796, at *10 (S.D.N.Y. Feb. 27, 2015) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 186 (2d Cir. 2008)); *see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 2013 WL 3322249, at *4 (S.D.N.Y. July 2, 2013) ("To determine the amount of attorneys' fees to which a prevailing party in a discovery dispute is entitled, the Court must calculate the 'presumptively reasonable fee,'" which "is calculated by multiplying the reasonable number of

hours that the case requires by the reasonable hourly rate.") (citations omitted), *aff'd,* 679 F. App'x 33 (2d Cir. 2017).

A. **Hourly Rate**

To arrive at a reasonable fee award, I must first determine the reasonable hourly rate for each timekeeper for whom fees are sought. "A fee applicant bears the burden of 'produc[ing] satisfactory evidence' that its requested rates are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4 (S.D.N.Y. Oct. 28, 2015) (quoting *Pearson Educ., Inc. v. Vergara*, 2010 WL 3744033, at *6 (S.D.N.Y. Sept. 27, 2010)), *report and recommendation adopted*, 2015 WL 9255560 (S.D.N.Y. Dec. 18, 2015). This inquiry properly includes a court's own knowledge of private firm hourly rates. *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4 (citing *Miele v. N.Y.S. Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987)).

Defendants seek fees for the time of four attorneys from defendants' law firm Gibson, Dunn, & Crutcher LLP (Gibson Dunn), at hourly rates ranging from $521.25 to $1,046.25. O'Boyle Decl. ¶¶ 27, 36. Defendants propose an hourly rate of $521.25 for third-year associate Grace E. Hart; $645.00 for sixth-year associate Goeke; $798.75 for partner O'Boyle; and $1,046.25 for partner Orin Snyder. *Id*. ¶¶ 11-14, 27, 36. According to attorney O'Boyle, these proposed rates represent "75% of [Gibson Dunn's] 2018 standard hourly rates" for these attorneys. *Id.* ¶ 16.

In an Order dated December 4, 2018 (Dec. 4 Order) (Dkt. No. 84), which resolved a prior fee application by defendants, the Court addressed the reasonableness of the proposed hourly rates of attorneys O'Boyle and Goeke. "Based on the specific facts of this case and the Court's familiarity with the rates customarily charged in this District," the Court awarded fees at the

4

hourly rates of $625 for attorney O'Boyle (a 22% reduction from defendants' proposed rate) and $425 for attorney Goeke (a 34% reduction), *id.* at 5, for work performed on discovery matters in October and November of 2018. (Dkt. No. 75-1.) Neither side moved for reconsideration of the Court's Dec. 4 Order, and neither side presents any compelling reason why the Court should not apply the same rates to the work at issue in this fee application, which was performed (also on discovery matters) between October 2018 and July 2019. O'Boyle Decl. Exs. C, D. The Court will therefore apply the same hourly rates for attorneys O'Boyle ($625) and Goeke ($425) as it did in that Order. *See* Dec. 4 Order at 3-5.

The Court now turns to the proposed hourly rates of partner Snyder and associate Hart. Attorney Snyder graduated law school in 1986 and, before joining Gibson Dunn, served as an Assistant United States Attorney in this District and as a partner "at a prominent New York litigation boutique." O'Boyle Decl. ¶ 11. He is currently a "senior partner and the Co-Chair of Gibson Dunn's Media, Entertainment and Technology Practice Group," and has been recognized as a leading commercial attorney by various national publications. *Id.* Associate Hart graduated from law school in 2016 and served as a law clerk to a United States District Judge and to a United States Circuit Judge before joining Gibson Dunn. *Id.* ¶ 14.

Attorney O'Boyle attests that Gibson Dunn's litigation department, in which both attorney Snyder and Hart practice, has been frequently recognized as one of the best departments in the country. *Id.* ¶ 19. She also points to case law in which courts in this District have awarded fees for the work of Gibson Dunn attorneys at or near the hourly rates proposed here, *id.* ¶ 20 (collecting cases), as well as a recent decision from the New York Supreme Court, New York County – involving most of the same attorneys from Sack & Sack and Gibson Dunn as in this case – in which the presiding judicial officer granted Gibson Dunn's requested hourly rates as

reasonable. Motion Order, *Burk v. Blink Health Ltd., et al.*, No. 656237/2017 (Sup. Ct. N.Y. Cty. Apr. 1, 2019).

Plaintiff principally argues that Gibson Dunn's rates "for its associates" are "unreasonably high." Opp. Mem. at 8. Plaintiff cites a handful of cases from 2015 and 2016, in this District, awarding hourly rates in the range of $300 to the low $400s for associates. *Id.* at 8-9. Plaintiff also reminds the Court that the litigation underlying defendants' fee application involved discovery disputes, and therefore that one factor courts consider in determining reasonable hourly rates – "the novelty and difficulty of the questions" at hand, *Access 4 All, Inc. v. Hi 57 Hotel, LLC*, 2006 WL 196969, at *2 (S.D.N.Y. Jan. 26, 2006) – favors further discounting defendants' proposed associate rates. Opp. Mem. at 8.

The Court agrees that, on the specific facts of this case, including that the underlying litigation concerned discovery rather than dispositive motion practice or trial, the rate proposed by defendants for third-year associate Hart should also be reduced. *See Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (the Court's determination of a reasonable hourly rate "contemplates a case-specific inquiry") (citation omitted); *Yorkville Advisors,* 2015 WL 855796, at *19 ("The prevailing market rates for attorneys [] in the Southern District of New York for fees incurred on discovery motions range from $450 to $600 for partners, $220 to $400 for associates[.]"). As noted above, the Court has already reduced sixth-year associate Goeke's hourly rate to $425, which is approximately two-thirds of her proposed rate of $625. O'Boyle Decl. ¶ 16. The Court will therefore apply a similar reduction to the proposed rate of attorney Hart, from $521.25 to $350, which betters align with the prevailing market rate for an attorney with her experience. *See, e.g.*, *H.B. Auto. Grp., Inc. v. Kia Motors Am., Inc.*, 2018 WL 4017698, at *8 (S.D.N.Y. July 25, 2018) (recommending an hourly rate of $350 for a mid-level associate, and collecting cases), *report and recommendation adopted*, 2018 WL 4007636 (S.D.N.Y. Aug.

22, 2018); *Nautilus Neurosciences, Inc. v. Fares*, 2014 WL 1492481, at *3 (S.D.N.Y. Apr. 16, 2014) (approving a $337.50 hourly rate as reasonable for a junior associate in an action to enforce a promissory note).

The Court also concludes that some reduction to attorney Snyder's proposed rate is in order. Defendants have submitted evidence that attorney Snyder's proposed rate of $1,046.25 is within the range of prevailing rates for law firm partners in this District. *See* O'Boyle Decl. Ex. B (December 2018 Legal Billing Report from Thomson Reuters reflecting dozens of attorneys in New York State billing at or above attorney Snyder's proposed rate of $1,046.25); *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 392 F. Supp. 3d 382, 407 (S.D.N.Y. 2019) (approving – and collecting cases approving – hourly rates exceeding $1,000). As with defendants' prior fee application, however, "the present fee application arises out of a discovery dispute that, in the Court's view, did not present particularly novel or complex issues of fact or law." Dec. 4 Order at 4.[1] To reflect that this fee application stems from a discovery dispute (more accurately, a series of discovery disputes) rather than from dispositive motion practice or trial, the Court will reduce attorney Snyder's proposed rate to approximately the same extent it reduced attorney O'Boyle's: from $1046.25 to $825.

B.   **Number of Hours Expended**

At the second stage of the analysis, I multiply each timekeeper's reasonable hourly rate by the reasonable number of hours expended. *Romeo & Juliette*, 2013 WL 3322249, at *4. Hours that are "excessive, redundant, or otherwise unnecessary" may be excluded from an attorneys' fee

---

[1] In their underlying motion papers – in which they sought sanctions up to and including dismissal of all of plaintiff's claims – defendants characterized the dispute as "a case of discovery misconduct reaching the point of no return," involving "countless lies" and a "complete lack of respect for the judicial process." (Dkt. No. 103 at 1.) The Court ultimately concluded that although the misconduct was "significant," it was not "so outrageous as to warrant outright disposition of the case." June 20 Mem. & Order at 2.

award. *Infinity Headwear & Apparel v. Jay Franco & Sons*, 2016 WL 6962541, at *5 (S.D.N.Y. Nov. 28, 2016) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

Defendants document 47.8 hours of attorney time expended as a result of violations of the July 12 Order by Sack & Sack, O'Boyle Decl. ¶ 27 & Ex. C, and 579.7 hours expended as a result of violations of the Court's later discovery orders by plaintiff and his counsel. *Id*. ¶ 36 & Ex. D. Attorney O'Boyle represents that these totals represent a "conservative allocation[] of time," and notes that she has already exercised discretion to reduce the hours in certain respects. *Id*. ¶¶ 28, 37.

Plaintiff mounts six challenges to defendants' requested hours. I address each in turn.

1. **Expenses Not "Caused By" Violations of Court Orders**

Plaintiff's first argument is that many of the hours expended by defendants' counsel were not "caused by" plaintiff's violations of court orders. Opp. Mem. at 1-3. Instead, plaintiff argues, defendants are improperly seeking "the costs, fees and expenses incurred concerning Plaintiff's *compliance* with the Court's Discovery Orders," Opp. Mem. at 1 (emphasis added), and the Court should not reimburse defendants for time spent "in hours of meet-and-confer conferences, followed up by lengthy email lists of discovery items," where the parties managed to resolve the particular dispute before defendants filed their motion for sanctions on March 1, 2019. *Id.* at 2.

Plaintiff highlights approximately half of the time entries in Exhibit D to the O'Boyle Declaration, *see* Declaration of Attorney Jonathan Sack (Sack Decl.) (Dkt. No. 129-2) Ex. A, and asserts that those entries "should be removed from Defendants' application." Opp. Mem at 2.[2] The challenged entries were generally dated between December 2018 and February 2019, when it was not yet certain that defendants would ultimately file their motion for sanctions. Plaintiff

---

[2] Plaintiff does not highlight any entries listed in Exhibit C to the O'Boyle Declaration (the time entries allegedly caused by Sack & Sack's violation of the July 12 Order). Nor does he appear to challenge those entries on the ground that they were not "caused by" Sack & Sack's misconduct.

8

challenges attorney Goeke's time entries in particular: "Ms. Goeke's contemporaneous time records in February of 2019 demonstrate that with every meet and confer with the Plaintiff to ensure discovery compliance with the Discovery Orders, Ms. Goeke inserted entries for sanctions motions, even though no motions were contemplated at that time." Opp. Mem. at 2-3.

The Court notes that Rule 37(b)(2)(C) provides that this Court must issue an award of reasonable expenses "caused by" a party's violation of Court orders, while Rule 37(e)(1) provides, more generally, that the Court may order "measures no greater than necessary to cure the prejudice" caused by a party's loss of spoliated ESI. Under neither rule is the Court limited to awarding expenses incurred by defendants "in making the motion" for sanctions. *Cf.* Fed. R. Civ. P. 37(a)(5)(A).

I conclude that the majority of the challenged fees reflect work that was "caused by" the discovery violations of plaintiff and his attorneys. All of the entries relate to work performed on or after December 10, 2018 – the date the Court warned plaintiff that "the clock will start" in the event of a motion for sanctions (Dkt. No. 89 at 56:11-21) – and the majority reflect work performed pursuing overdue discovery from plaintiff. Sack Decl. Ex. A. As the June 20 Mem. & Order explained, "[h]ad plaintiff substantially completed his document production by December 3, 2018 – as required by ¶ 4(a) of the November 13 Order – defendants would not have incurred the fees and other expenses they ultimately shouldered over the ensuing months in pursuing the remainder of the discovery to which they were entitled." June 20 Mem. & Order at 51. Defendants' fee request therefore properly includes time expended, between December 2018 and the date of defendants' sanctions motion, pursuing discovery which plaintiff and its counsel should have produced much earlier.

However, as the June 20 Mem. & Order explained, not all of defendants' discovery-related expenses – or even all expenses incurred after December 10, 2018 – are recoverable. June

20 Mem. & Order at 52. For example, while defendants' efforts to pursue overdue discovery are reimbursable, their time reviewing that discovery, once produced, was not "caused by" plaintiff's violations, since defendants would have reviewed the same materials – likely with the same degree of care – even if they had been timely produced. *See, e.g.* O'Boyle Decl. Ex. D at 2 ("Meeting with L. O'Boyle regarding discovery issues; review opposing counsel documents."), 10 ("Correspond with P. Gentile regarding production of documents from S. Karsch; correspond with L. O'Boyle regarding productions from S. Karsch."), 14 ("Review and analyze Plaintiff's 1/11/2019 document productions for completeness and compliance with the Court's orders."), 16 ("Analyze documents produced by Plaintiff involving the Karsch Capital email domain . . ."); 17 ("Review and analyze documents produced in forensic examination of S. Karsch's AOL account."). Moreover, plaintiff identifies at least one time entry in defendants' request that appears to relate to an email dated December 18, 2018, in which defendants wrote to plaintiff concerning *defendants'* inadvertent withholding of documents as privileged, an issue which was plainly not caused by plaintiff's or his firm's discovery misconduct. *See* Opp. Mem. at 2; O'Boyle Decl. Ex. C; Sack Decl. Ex. C.

Because defendants would have completed some of the work summarized in Exhibit D to the O'Boyle Declaration regardless of plaintiff's discovery violations, the Court will impose a 25% across-the-board reduction to those hours. *See, e.g., Pichardo v. C.R. Bard, Inc.*, 2015 WL 13784565, at *6 (S.D.N.Y. Jan. 26, 2015) (applying an across-the-board reduction "to ensure that defendants' recovery is limited to fees caused by" plaintiff's counsel's violations); *Reiter v. Metro. Transp. Auth. of State of New York,* 2007 WL 2775144, at *13 (S.D.N.Y. Sept. 25, 2007) ("The Second Circuit has stated that a district court is not required to 'set forth item-by-item findings concerning what may be countless objections to individual billing items.' . . . Case law

is replete with instances where courts have made percentage reductions in the amounts requested.") (citations omitted).³

### 2. Vague and Ambiguous Time Entries

Plaintiff next urges the Court to reduce defendants' fee award due to the vagueness and ambiguity of certain Gibson Dunn time entries. Plaintiff criticizes attorney Snyder's entries in particular, noting that among them are hours expended on "[d]iscovery issues," "[a]ttention to status and strategy," and "[a]ttention to sanctions issues," as well as those of attorney O'Boyle, which include "[c]onference with team re: discovery issues," "[c]orrespondence re: discovery," and "[c]orrespondence re: discovery/next steps." Opp. Mem. at 4 (quoting O'Boyle Decl. Ex. D at 2-6).

I agree that several of Gibson Dunn's time entries are overly vague. However, the vast majority of those entries are sufficiently detailed for the Court to discern that they appropriately fall within the scope of this fee award. I therefore conclude that a modest 5% reduction in the hours requested will sufficiently address the vagueness of certain of the entries. *See Mayo-Coleman v. Am. Sugars Holding, Inc.*, 2019 WL 1034078, at *5 (S.D.N.Y. Mar. 5, 2019) ("Given the vagueness of these entries, the Court finds a modest across-the-board reduction of 5% is appropriate.").

### 3. Block-Billing

Plaintiff next argues that the Court should reduce defendants' requested award because "Gibson Dunn engaged in improper block-billing," which plaintiff defines as "the lumping

---

³ As noted above, plaintiff does not argue that any of the entries listed in Exhibit C to the O'Boyle Declaration, stemming from Sack & Sack's violations of the July 12 Order, were not "caused by" plaintiff's misconduct. I therefore do not apply the 25% across-the-board reduction to the hours listed in Exhibit C.

together of daily time entries consisting of two or more task descriptions, or the grouping of different tasks within a single block of time on a time record." Opp. Mem. at 5.

"Block-billing, the practice 'of aggregating multiple tasks into one billing entry,' is 'not prohibited,'" but can make it "'difficult for courts to assess the reasonableness of the hours billed,'" *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010) (quoting *Wise v. Kelly*, 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008)), especially where less than all of the block-billed tasks are compensable. In some circumstances, the practice can justify "a substantial reduction" in a requested fee award. *See, e.g., Vista Outdoor Inc. v. Reeves Family Tr.*, 2018 WL 3104631, at *8 (S.D.N.Y. May 24, 2018) ("The Court finds a substantial reduction on account of block billing appropriate here not only because of the limitation that Gibson Dunn itself imposed on its claim by making use of this disfavored approach but also because the Court finds that, on almost any analysis, some of Gibson Dunn's billing was excessive.").

In this case, however, I have little difficulty discerning from defendants' block-billed time entries that they relate either to the same task or to related tasks, all of which were necessitated by plaintiff's discovery misconduct. *See, e.g.*, O'Boyle Decl. Ex. D at 6 (O'Boyle time entry: "Revise talking points for sanctions hearing; review key cases and docket entries for same; prepare with O. Snyder for same; teleconference with J. Goeke re hearing and next steps; correspondence re same."), 9 (Goeke time entry: "Review and revise discovery motion; correspond with A. Seidenberg regarding discovery motion deadline; conference with L. O'Boyle regarding discovery motion."), 14 (Hart time entry: "Meet with L. O'Boyle and J. Goeke about strategy for Rule 37 motion for sanctions; review and analyze Plaintiff's 1-18-2019 productions for completeness and compliance with the Court's orders; prepare talking points for 1-23-2019 meet and confer with Plaintiff's counsel."). I therefore conclude that a modest 5% across-the-board reduction in the hours requested will sufficiently address plaintiff's complaints

regarding defendants' block-billing. *See also Kerr v. John Thomas Fin.*, 2017 WL 435826, at *10 (S.D.N.Y. Jan. 31, 2017) ("An additional 5% reduction is warranted due to plaintiff's attorneys' block-billing and vague time entries."), *report and recommendation adopted as modified*, 2017 WL 1609224 (S.D.N.Y. May 1, 2017); *Heisman Trophy Tr. v. Smack Apparel Co.*, 665 F. Supp. 2d 420, 426 (S.D.N.Y. 2009) (reducing award by five percent to account for block billing), *aff'd*, 379 F. App'x 12 (2d Cir. 2010).

### 4. Excessive Billing

Plaintiff next asserts that Gibson Dunn's time entries reflect excessive billing. Opp. Mem. at 6. The Court agrees in part. For example, defendants' billing records reflect that their attorneys spent at least 28.3 hours between March 26 and April 7, 2019 preparing for the April 8, 2019 motion hearing, although the attorney who actually argued the motion – Snyder – billed only 2.3 of those hours. This suggests a certain degree of inefficiency. Similarly, defendants' attorneys spent at least 40.8 hours preparing and submitting defendants' fee application, notwithstanding that portions of it were (appropriately) recycled from their previous fee application. (*Compare* Dkt. No. 75 *with* Dkt. No. 125.)

Nonetheless, my review of defendants' time records reveals only occasional excesses of this nature. Moreover, plaintiff identifies only one specific task, totaling 1.4 hours, with which he takes particular issue. Opp. Mem. at 6. I therefore conclude that another 5% across-the-board reduction will sufficiently address any excessive billing.

### 5. Overstaffing

Plaintiff also requests that the Court reduce Gibson Dunn's proposed hours "on account of its overstaffing," complaining that the firm "staffed two partners and a senior associate on this matter" in addition to junior attorney Hart. Opp. Mem. at 7. For example, plaintiff argues, "the

drafting of the January 28th letter alone, as reflected in the invoices of the different attorneys, demonstrates excessive time spent" by too many timekeepers. *Id.*

The Court understands "the January 28th letter" to refer to defendants' January 28, 2019 letter-motion (Dkt. No. 96) alerting the Court to additional discovery misconduct by plaintiff and seeking, on consent, an extension of time to file defendants' motion for sanctions. To be sure, it rarely requires the efforts of four attorneys (or even three) to prepare an unopposed letter-motion seeking an extension of time.[4] However, the January 28 letter – which consisted of four single-spaced pages of text and seven exhibits – also detailed plaintiff's most recent discovery misconduct and requested an order directing plaintiff to "produce responsive documents from the Karsch Capital server on an expedited basis and at his own expense." (Dkt. No. 96.) I cannot conclude, based on this example, that the number of attorneys working on the letter was entirely unreasonable.

Nor was it improper for four attorneys to work on the discovery phase of this action. First, the most senior attorney, Snyder, had a relatively limited role, which "included providing strategic advice, reviewing and revising briefs and letters, and arguing the Sanctions Motion at the April 8, 2019 hearing." O'Boyle Decl. ¶ 11. Defendants seek to recover fees for only 24.9 hours of attorney Snyder's work over a six-month period. *Id.* Exs. C, D. Second, while defendants' motion did not present particularly novel or complex issues, it did require close analysis of a large number of related issues, arising over a period of more than three years, and ultimately resulted in a 56-page Memorandum and Order. *See* June 20 Mem. & Order at 3-22

---

[4] Gibson Dunn's time records show that attorney Snyder billed 1 hour on "[d]iscovery matters" on January 28, which may or may not have included the letter; attorney O'Boyle spent 2.1 hours to the letter on January 26 and 27 and another 1.8 hours on a variety of tasks, including the letter, on January 28; attorney Goeke spent 3.3 hours on the letter on January 27 and another 8 hours on a variety of tasks, including the letter, on January 26 and 28; and attorney Hart spent a total of 5 hours on a variety of tasks, including some "in connection with preparing" the letter, on January 26 and 28. O'Boyle Decl. Ex. D.

14

(detailing the factual and procedural background to the sanctions motion). Third, it appears that plaintiff's law firm, Sack & Sack, also deployed four attorneys to work on the contested matters. (*See, e.g.*, Dkt. Nos. 104-2, 104-3, 104-5, 104-17.) Plaintiff is therefore in a poor position to argue that four is too many.

### 6. Clerical and Administrative Tasks Performed by Attorneys

Finally, plaintiff argues that the requested hours should be reduced because defendants' attorneys' time entries include "[c]lerical work," which is "generally not recoverable because it is considered overhead that is taken into account when the law firm sets its attorneys' hourly rates." Opp. Mem. at 8 ("Defendants [sic] ask that the fee award be reduced to account for improper requests."). Plaintiff does not cite any examples of time entries involving clerical work in defendants' time sheets, and the Court's own review does not reveal any such entries. The Court therefore will not reduce defendants' requested hours on this basis.

## C. Costs

Defendants also seek to recover $22,178.99 in costs for Stroz Friedberg's work performed and expenses incurred "in connection with Stephen Karsch's AOL account." Goeke Decl. ¶ 16, Ex. A. As explained in the June 20 Mem. & Order (and detailed in the ¶¶ 3-11 of the Goeke Declaration), plaintiff failed to complete his search of and production of documents from that AOL account, despite twice certifying that he had done so, requiring defendants to deploy their own consultant, Stroz Friedberg, to search the account for responsive documents, isolate privileged documents, and produce the remaining responsive documents to all parties. June 20 Mem. & Order at 29, 40-41; Goeke Decl. ¶ 10. Ultimately, "Stroz Friedberg retrieved 790 responsive documents from Stephen Karsch's AOL account – the vast majority of which had not been previously produced" by plaintiff. Goeke Decl. ¶ 11.

Plaintiff does not oppose defendants' request for reimbursement of the expenses incurred by Stroz Friedberg. I conclude that these expenses fall squarely within those properly awarded by the June 20 Mem. & Order, and should be reimbursed in full.

## Conclusion

For the reasons stated above, the Court awards fees and expenses as follows:

|  | Attorney | Rate | Hrs. Requested | % Reduction | Hrs. Awarded | Award |
|---|---|---|---|---|---|---|
| **O'Boyle Ex. C** | Snyder | $825 | 2 | 15% | 1.7 | $1,402.50 |
|  | O'Boyle | $625 | 8.7 | 15% | 7.395 | $4,621.88 |
|  | Goeke | $425 | 17.1 | 15% | 14.535 | $6,177.38 |
|  | Hart | $350 | 20 | 15% | 17 | $5,950.00 |
| *Total* |  |  |  |  | *Sack & Sack* | **$18,151.75** |
|  |  |  |  |  |  |  |
|  | **Attorney** | **Rate** | **Hrs. Requested** | **% Reduction** | **Hrs. Awarded** | **Award** |
| **O'Boyle Ex. D** | Snyder | $825 | 22.9 | 40% | 14.885 | $11,335.50 |
|  | O'Boyle | $625 | 93.4 | 40% | 60.71 | $35,025.00 |
|  | Goeke | $425 | 192.8 | 40% | 125.32 | $49,164.00 |
|  | Hart | $350 | 270.6 | 40% | 175.89 | $56,826.00 |
| *Total* |  |  |  |  | *Joint & Several* | **$152,350.50** |

In addition, the Court awards defendants $22,178.99 in costs. In total, therefore, defendants are awarded $18,151.75 in sanctions as against plaintiff's attorneys at Sack & Sack LLP, as well as $174,529.49 ($152,350.50 in fees + $22,178.99 in costs) in sanctions as against plaintiff and his attorneys at Sack & Sack, jointly and severally. Payment is to be made within forty-five days of this Order.

Dated: New York, New York  
       December 20, 2019

**SO ORDERED**.

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**