USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: May 24, 2021

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
MICHAEL KARSCH,                    :
                      Plaintiff,   :      17 Civ. 3880 (VM)
    - against -                    :
                                   :
BLINK HEALTH LTD., et al.,         :      DECISION AND ORDER
                      Defendants.  :
-----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff Michael Karsch ("Karsch" or "Plaintiff") commenced this action against defendants Blink Health Ltd., Geoffrey Chaiken, and Matthew Chaiken ("Defendants") alleging securities fraud, common-law fraud, fraudulent inducement or misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, fraudulent concealment, and negligent misrepresentation, and seeking a court-ordered accounting.

By letter dated August 19, 2020, Defendants requested a premotion conference and set forth the grounds for a proposed motion for summary judgment. (See "Letter Motion," Dkt. No. 168.) The Letter Motion raised three primary grounds for dismissal: (1) the events triggering debt-to-equity conversion under the terms of the parties' agreement never materialized, and therefore there was no breach of contract; (2) Karsch was repaid his initial investment, and therefore he suffered no recoverable damages for purposes of his fraud claims; and (3) the remainder of Karsch's claims are

1

duplicative of the breach-of-contract claims, and therefore those claims should be dismissed as well. By letter dated August 26, 2020, Plaintiff opposed the Letter Motion. (See Dkt. No. 170.)

The Court denied Defendants' request in part and withheld judgment in part. (See "March 23 Order," Dkt. No. 171.) The Court stated that it was not inclined to grant a motion for summary judgment on Plaintiff's breach-of-contract claim because disputed material facts, such as whether any events triggering conversion based on the parties' agreements took place, remain. However, because Defendants had raised compelling arguments as to why Plaintiff's various fraud claims (the "Fraud Claims") and claims for violation of the covenant of good faith and fair dealing, unjust enrichment, negligent misrepresentation, and breach of fiduciary duty (the "Remaining Noncontractual Claims") should be dismissed, Plaintiff was ordered to show cause as to why these claims should not be dismissed as a matter of law.

Now before the Court is a motion for partial reconsideration of the March 23 Order, filed by Defendants on April 6, 2021. (See Motion for Reconsideration, Dkt. No. 174, and "Defs. Mem.," Dkt. No. 175, collectively, the "Reconsideration Motion.") Plaintiff filed a memorandum of law in opposition of the Reconsideration Motion on April 20,

2021 (see "Opposition," Dkt. No. 179), and Defendants filed a reply memorandum of law in further support of the Reconsideration Motion on April 27, 2020 (see "Reply," Dkt. No. 182).

Also before the Court is Plaintiff's response to the order to show cause, which was submitted on April 2, 2021. ("April 2 Letter," Dkt. No. 173.) Defendants submitted a reply to Plaintiff's April 2 Letter on April 15, 2021. ("April 5 Letter," Dkt. No. 178.)

For the reasons set forth below, the Reconsideration Motion is GRANTED. Further, while the Court will allow the parties to more fully brief whether the Fraud Claims should be dismissed, the Remaining Noncontractual Claims are hereby DISMISSED as a matter of law.

## I. LEGAL STANDARD

Motions for reconsideration are governed by Local Rule 6.3, which is "intended to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" SEC v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). When assessing a motion for reconsideration, a district court must "narrowly construe and

strictly apply" Local Rule 6.3 to "avoid duplicative rulings on previously considered issues" and to prevent the rule from being used to advance theories not previously argued or as "a substitute for appealing a final judgment." Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002).

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000). Accordingly, the Second Circuit has held that the threshold for granting a motion to reconsider is "high," and such motions are generally denied "unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Nakshin v. Holder, 360 F. App'x 192, 193 (2d Cir. 2010); see also Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (same).

"The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992); accord Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable

4

Tr., 729 F.3d 99, 104 (2d Cir. 2013). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257; see also Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (noting that reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple" (internal quotation marks omitted)).

The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (citations omitted).

## II. DISCUSSION

The Court finds that the Reconsideration Motion here meets this exacting standard. As to the Remaining Noncontractual Claims, the Court holds that they are duplicative of Karsch's breach-of-contract claim and therefore may be dismissed as a matter of law. The Court will withhold judgment on the Fraud Claims, however, and will allow the parties to more fully brief the appropriateness of dismissal of these claims. The Court first addresses the Reconsideration Motion before turning to the arguments in the Letter Motion, April 2 Letter, and April 5 Letter regarding

5

dismissal of the Fraud Claims and the Remaining Noncontractual Claims.

A. <u>RECONSIDERATION MOTION</u>

Defendants have pointed to evidence that the Court had not previously considered that might reasonably be expected to alter the Court's earlier conclusion. The Court indicated in its March 23 Order that it was not inclined to grant any motion for summary judgment because there were outstanding factual issues, such as whether an event triggering a debt-to-equity conversion had occurred. But Defendants have made a compelling argument for why this factual issue may not be material.

The conversion of Karsch's debt into equity is governed, at least in part, by the Convertible Promissory Note ("Note"). The Note required that Defendants convert Karsch's debt to equity if Series A Preferred Shares were issued by the company. There is no dispute that no Series A Preferred Shares were issued before Karsch was repaid his initial investment, and therefore, no debt was converted to equity under the terms of the Note. However, Karsch argues that his debt was converted to equity before repayment under the terms of a different agreement called the "Side Letter Agreement." The Side Letter Agreement provides:

> In the event that the Company creates a new class of shares to be issued to Geoffrey Chaiken or reclassifies shares currently held by Geoffrey Chaiken to shares having superior voting rights on a per share basis to the Company's Series A Preferred Shares . . . , Investor shall have the option to exchange the Series A Preferred Shares issued or issuable upon conversion of the Investor Note for such Superior Shares at the time such Superior Shares are first issued.

The parties interpret this language differently. Defendants contend that the Side Letter Agreement only allows Karsch to upgrade any shares he received pursuant to the Note, meaning that a conversion event under the Note must first occur before the Side Letter Agreement's terms could take effect. Karsch argues that the "issued or issuable" language of the Side Letter Agreement, which supersedes the Note, allows for conversion even without any of the conditions precedent of the Note occurring. Karsch further argues that because Chaiken was issued common shares, Karsch was owed equity under the Side Letter Agreement's terms.

Ultimately, however, the parties' dispute over the proper interpretation of the Side Letter Agreement and whether the Side Letter Agreement provides a separate avenue for debt-to-equity conversion may not matter. Assuming it could, Karsch concedes that Geoffrey Chaiken was issued only common shares, and Defendants point to evidence suggesting that common shares are not "shares having superior voting

7

rights on a per share basis to the Company's Series A Preferred Shares." (See Defs. Mem. at 11 (citing Dkt. No. 175-4).) Therefore, it may be that no debt-to-equity conversion-triggering event occurred under either of the parties' differing interpretations of the Side Letter Agreement. In that case, the Court may have reached an altogether different conclusion on the appropriateness of granting summary judgment. For this reason, the Court grants the Reconsideration Motion to allow further briefing on whether there is an appropriate basis to grant Defendants' motion for summary judgment with respect to Karsch's breach-of-contract claim.

B. DISMISSAL OF THE REMAINING NONCONTRACTUAL CLAIMS AND FRAUD CLAIMS

The Court is persuaded that the Remaining Noncontractual Claims -- that is, Karsch's breach of the covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, and negligent misrepresentation claims -- are duplicative of the breach-of-contract claim. It is well established that a plaintiff bringing a breach-of-contract claim cannot also bring a claim for breach of the covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, or negligent misrepresentation arising from the terms of the contract. See, e.g., MVP Health Plan, Inc.

v. OptumInsight, Inc., 765 F. App'x 615, 617 (2d Cir. 2019) (noting that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated" (citation omitted)); Mexico Infrastructure Finance, LLC v. Corp. of Hamilton, No. 17 Civ. 6424, 2020 WL 4572679, at *6 (S.D.N.Y. Aug. 7, 2020) (explaining that a breach-of-fiduciary-duty claim may be dismissed when the agreement covers the subject matter of the alleged fiduciary duty); Houston Casualty Co. v. Paul Ryan Assocs., Inc., 348 F. Supp. 3d 363, 364 (S.D.N.Y. 2018) ("Under New York law, because 'every contract contains an implied covenant of good faith and fair dealing,' a 'cause of action alleging a breach of good faith is duplicative of a cause of action alleging breach of contract.'" (citation omitted)); Professional Merchant Advance Capital, LLC v. C Care Services, LLC, No. 13 Civ. 6562, 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015) (noting that a claim for unjust enrichment is duplicative of a breach-of-contract claim when there is an enforceable agreement and the same damages are sought).

In the April 2 Letter, Karsch addresses only the validity of his claim for breach of the covenant of good faith and

fair dealing.[1] Karsch argues that this claim is valid because it is premised on Defendants' conduct in allegedly depriving Karsch of the benefit of his bargain. The Court is not persuaded.

It is true that a plaintiff may bring a claim for breach of the covenant of good faith and fair dealing when "one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain." Pearce v. Manhattan Ensemble Theater, Inc., 528 F. Supp. 2d 175, 180-81 (S.D.N.Y. 2007) (citation omitted). But Karsch has not adequately shown cause as to how this exception applies in the instant case.

Karsch argues in the April 2 Letter that "Blink's bad faith actions misled Karsch in respect of their intention to convert his investment into equity" and points to Defendants' use of the capital raised from the Bridge 1 financing round to prepay Karsch's investment. (April 2 Letter at 4.) But this is not conduct that supports a deprivation of the duty of good faith and fair dealing. The duty of good faith and fair dealing is "meant to prevent either party from

---

[1] In a footnote to the April 2 Letter, Karsch states that because "Karsch's breach of contract claim has survived summary judgment (Dkt. 171), Karsch does not oppose Blink's request for summary judgment on Karsch's claims for unjust enrichment, negligent misrepresentation, and breach of fiduciary duty." (April 2 Letter at 1 n.1.) The Court construes this statement as a concession on Karsch's part that these claims are duplicative of the breach-of-contract claim.

'destroying or injuring the right of the other party to receive the fruits of the contract." Gruppo, Levey & Co. v. ICOM Info. & Comm'cns, Inc., No. 01 Civ. 8922, 2003 WL 21511943, at *8 (S.D.N.Y. July 1, 2003) (internal quotation marks and citation omitted). However, "a party does not violate the covenant of good faith and fair dealing solely by acting in its own self-interest consistent with its rights under the contract." S. Telecom Inc. v. ThreeSixty Brands Grp., LLC, No. 20 Civ. 2151, 2021 WL 621235, at *12 (S.D.N.Y. Feb. 17, 2021) (internal quotation marks and citation omitted). Here, there is no dispute that Defendants were well within their contractual rights to prepay the Note before Karsch's debt converted to equity. (See Dkt. No. 176-1, at 4 ("The Company may prepay the Notes without penalty, but any prepayment shall be made pro rata among all Notes.").)

The Court is not fully persuaded, however, that Karsch's fraud claims should be dismissed as a matter of law. A plaintiff typically cannot maintain a claim for fraud, "when the only fraud charged relates to a breach of contract, or where the fraud claim is duplicative of, or inextricably related to, a breach of contract claim." Dooley v. Metropolitan Jewish Health Sys., No. 02 Civ. 4640, 2003 WL 22171876, at *10 (E.D.N.Y. July 30, 2003) (citation omitted). But a plaintiff may differentiate the two claims if he or she

can demonstrate a legal duty separate from the duty to perform under the contract; demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or seek special damages. Somnia, Inc. v. Change Healthcare Technology Enabled Servs., LLC, No. 19 Civ. 8983, 2021 WL 639529, at *5 (S.D.N.Y. Feb. 16, 2021).

Karsch seems to suggest that the relevant misrepresentations and omissions were collateral to the contract. A fraud is considered collateral or extraneous when it "consist[s] of independent false representations, made before there ever was a contract between the parties, which [leads a Plaintiff] to enter into it." Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737, 747 (2d Cir. 1979). But the parties' briefing on whether the complained-of misrepresentations can be considered collateral or extraneous is minimal. The Court will accordingly allow the parties to further brief whether there is an appropriate basis to grant Defendants' proposed motion for summary judgment with respect to Karsch's Fraud Claims.

### III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that defendants Blink Health Ltd., Geoffrey Chaiken, and Matthew Chaiken's motion for reconsideration (Dkt. No. 174) is GRANTED. The parties are directed to submit

12

a proposed briefing schedule with deadlines for Defendants' proposed motion for summary judgment on Plaintiff's breach-of-contract claim and fraud claims, Plaintiff's opposition to summary judgment, and Defendants' reply brief; and it is further hereby

**ORDERED** that the Remaining Noncontractual Claims (Counts Six through Eight and Ten through Eleven) are DISMISSED with prejudice.

**SO ORDERED.**

Dated: New York, New York
24 May 2021

_____
Victor Marrero
U.S.D.J.